IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-cv-00321

ATLANTIC COAST PIPELINE, LLC,

    *Plaintiff*,

v.

9.831 ACRES, MORE OR LESS, IN WILSON COUNTY, NORTH CAROLINA, LOCATED ON PARCEL IDENTIFICATION NO. 2772-25-9316.000, AND DESCRIBED AS TRACT TWO IN A DEED FROM LAWTON E. NICHOLS TO ZILPHIA H. NICHOLS, DATED JUNE 23, 2000 AND RECORDED AT VOLUME 1768, PAGE 684; LOCATED ON PARCEL IDENTIFICATION NO. 2772-23-5133.000, AND DESCRIBED IN BOOK 2041, PAGE 678, OF THE PUBLIC RECORDS OF SAID COUNTY, LESS AND EXCEPT (A) 0.92 ACRE DESCRIBED IN THAT GENERAL WARRANTY DEED RECORDED AT BOOK 2609, PAGE 347, (B) 0.92 ACRE DESCRIBED IN THAT GENERAL WARRANTY DEED RECORDED AT BOOK 2627, PAGE 116 AND (C) 0.03 ACRE DESCRIBED IN THAT NORTH CAROLINA GENERAL WARRANTY DEED RECORDED AT BOOK 2627, PAGE 121,

    and

ZILPHIA H. NICHOLS
7214 Old Raleigh Road
Sims, NC 27880,

    *Defendants*.

**COMPLAINT IN CONDEMNATION**

15 U.S.C. § 717f(h); Fed. R. Civ. P. 71.1

## Nature of the Case

1. Plaintiff Atlantic Coast Pipeline, LLC ("Atlantic"), pursuant to its power of eminent domain as authorized by Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), and Federal Rule of Civil Procedure 71.1, files this action for (i) the taking of certain interests in real property; (ii) if later requested, immediate possession of the easements described herein; and (iii) the ascertainment and award of just compensation to the owners of interest in real property, Zilphia H. Nichols, and any other interested parties (collectively, the "Owner").

## Jurisdiction and Venue

2. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), because: (a) Atlantic is the holder of a certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC") for the construction of an interstate natural gas pipeline that crosses West Virginia, Virginia, and North Carolina; (b) Atlantic, despite negotiation efforts, has been unable to acquire by contract, or has been unable to agree with the Owner as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas; and (c) the amount claimed by the Owner exceeds $3,000.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the interests in the real property that Atlantic seeks to condemn are located within the Eastern District of North Carolina.

## Parties

4. Atlantic is a Delaware limited liability company with its principal office located at 120 Tredegar Street, Richmond, Virginia 23219. Atlantic is an interstate natural gas company as defined by the Natural Gas Act, 15 U.S.C. § 717a(6), and, as such, is authorized to construct, own, operate, and maintain pipelines for the transportation of natural gas in interstate commerce.

Atlantic's transportation of natural gas in interstate commerce is subject to the jurisdiction and approval of FERC.

5. The Owner has an ownership interest in certain tracts of land located in Wilson County, North Carolina identified as (1) Parcel Identification No. 2772-25-9316.000, composed of 32 acres, more or less, and being more particularly described as Tract Two in a Deed from Lawton E. Nichols to Zilphia H. Nichols, dated June 23, 2000 and recorded at Volume 1768, page 684 of the public records of said County (the "9316 Parcel") and (2) Parcel Identification No. 2772-23-5133.000, composed of 93.157 acres, more or less, and being more particularly described as that tract of land covering 95 acres, more or less, more particularly described in Book 2041, Page 678, of the public records of said County, *less and except* (a) 0.92 acres described in that General Warranty Deed recorded at Book 2609, Page 347, (b) 0.92 acres described in that General Warranty Deed recorded at Book 2627, Page 116 and (c) 0.03 acres described in that North Carolina General Warranty Deed recorded at Book 2627, Page 121, all in the public records of Wilson County, North Carolina, leaving a balance of 93.157 acres, more or less, covered by this tract of land (the "5133 Parcel") (the aforementioned parcels are collectively referred to as the "Property"). The 9316 Parcel is depicted in **Exhibit 1-A**, and the 5133 Parcel is depicted in **Exhibit 1-B**.

6. There may be other persons who claim an interest in the property to be condemned whose names are currently unknown to Atlantic because they could not be ascertained by a diligent inquiry. These persons will be made parties to this action as permitted by Federal Rule of Civil Procedure 71.1(c)(3).

## Facts

7. Atlantic is in the process of constructing an approximately 600-mile underground pipeline and related facilities for the purpose of transporting natural gas from West Virginia to Virginia and North Carolina (the "ACP Project").

8. The ACP Project will measure approximately 42 inches in diameter in West Virginia and Virginia, and 36 inches in diameter in North Carolina. Certain extensions of the ACP Project will measure 20 inches in diameter from Northampton County, North Carolina to the City of Chesapeake, Virginia and 16 inches in diameter in Brunswick County, Virginia and Greensville County, Virginia.

9. Natural gas transported by the ACP Project will serve multiple public utilities and is necessary to satisfy the growing energy needs of consumers in Virginia and North Carolina.

10. Atlantic filed an application for a certificate of public convenience and necessity with FERC on September 18, 2015, FERC Docket No. CP15-554-000, in which it sought permission to construct the ACP Project and attendant facilities. On October 13, 2017, FERC issued a certificate of public convenience and necessity (the "FERC Certificate") authorizing Atlantic to construct and operate the ACP Project. A copy of the FERC Certificate is attached as **Exhibit 2**.

11. FERC found that the ACP Project will "primarily serve natural gas demand in Virginia and North Carolina." *See* Ex. 2, at 35, ¶ 79.

12. FERC also found that the "public at large will benefit from increased reliability of natural gas supplies." *See* Ex. 2, at 35, ¶ 79.

13. As a result, the ACP Project "serves a 'public use'" as determined by FERC. *See* Ex. 2, at 34, ¶ 79.

14. Atlantic must begin construction of the ACP Project as soon as possible to ensure completion within FERC's deadline. *See* Ex. 2.

15. The FERC-approved route of the ACP Project crosses the Property. A map depicting the route of the ACP Project is attached as **Exhibit 3**.

16. Atlantic seeks to construct a portion of the ACP Project on the Property. The ACP Project cannot be constructed until Atlantic acquires certain permanent easements (the "Permanent Easements") and temporary easements (the "Temporary Easements") (collectively the "Easements") on the Property. The Easements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing the ACP Project.

17. A plat depicting the size and nature of the Easements and the ACP Project's route across the 9316 Parcel is attached hereto as **Exhibit 4-A**. A plat depicting the size and nature of the Easements and the ACP Project's route across the 5133 Parcel is attached hereto as **Exhibit 4-B**.

18. The Permanent Easements to be taken on the Property include a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove or abandon the ACP Project and appurtenant equipment and facilities, as well as the right to change the location of the installed pipeline within the area of the Permanent Easement as may be necessary or advisable.

19. The Temporary Easements will enable Atlantic to construct the ACP Project and engage in restoration or clean-up activities. The Temporary Easements are requested as of the date of authorized entry onto the Property and their use is required until all work, including restoration, is complete. The Temporary Easements will be effective and condemned for a period not to exceed five (5) years following Atlantic's possession of the Easements.

20. Atlantic also seeks to acquire the right of ingress and egress to and from and through the Easements; the right to transport pipe, vehicles, machinery, persons, equipment, or other materials to and from and through the Easements, and the right of access through any existing roads on the Property.

21. Atlantic also seeks the right to fell trees and clear brush or other vegetation as necessary or convenient for the safe and efficient construction, operation, or maintenance of the ACP Project or to maintain safe and efficient access to and from the ACP Project.

22. The Owner shall retain the right to use the Property in any manner that will not interfere with the use and enjoyment of Atlantic's rights under the Easements. Specifically, the Owner shall not, without the prior written consent of Atlantic: (a) change the depth of cover or otherwise undertake earthmoving or construction within the Permanent Easements; (b) place or permit to be placed any temporary or permanent structure or obstruction of any kind, including but not limited to buildings, swimming pools, sheds, concrete pads, mobile homes, trees, telephone or electric poles, water or sewer lines, or similar structures, within the Permanent Easements; (c) store or operate any heavy equipment in the Permanent Easements, except the use of typical farming equipment; and (d) construct ponds or lakes in a manner that would flood the Permanent Easements.

23. Atlantic has negotiated with the Owner and has made several efforts to acquire the Easements by contract.

24. Atlantic began negotiating with the Owner as to the 5133 Parcel in September 2015. Specifically, an initial offer letter dated September 28, 2015 was sent to the Owner regarding acquiring certain easements for the ACP Project. An initial offer letter dated November 6, 2015

was sent to the Owner regarding acquiring certain easements on the 9316 Parcel for the ACP Project.

25. After being informed that the Owner was represented by counsel, an agent of Atlantic (the "First Agent") continued negotiations with Owner's counsel through the end of 2015 and the beginning of 2016.

26. The First Agent contacted Owner's counsel throughout August 2016 until October 2016 by telephone and electronic mail to inquire as to whether the Owner had a counteroffer for the acquisition of easements for both parcels.

27. On December 28, 2016, another agent of Atlantic (the "Second Agent") contacted the Owner's counsel through electronic mail in order to further negotiations regarding both parcels.

28. On February 8, 2017 and February 21, 2017, the Second Agent met with Owner's counsel in person to continue negotiations. The Second Agent and Owner's counsel continued negotiations by electronic mail through March 2017 and April 2017.

29. On April 20, 2017, the Second Agent and Owner's counsel met to negotiate further regarding easements. The parties continued to negotiate by electronic mail and telephone through the end of 2017. The negotiations were not successful.

30. On May 17, 2018, the Second Agent met with Owner's counsel in person to negotiate the easement acquisition.

31. On May 22, 2018, the Third Agent emailed the Owner's counsel regarding an updated offer for both parcels.

32. Atlantic sent the Owner and Owner's counsel a final offer letter for the 5133 Parcel, dated June 6, 2018, along with a copy of the plats attached hereto as **Exhibit 4-A** and **Exhibit 4-**

**B**.  Atlantic sent the Owner and Owner's counsel a final offer letter for the 9316 Parcel, dated June 11, 2018, along with a copy of the plats attached hereto as **Exhibit 4-A** and **Exhibit 4-B**.

33. On June 18, 2018, the Third Agent called Owner's counsel to discuss the final offer letter and continue negotiations.

34. On June 22, 2018 and June 28, 2018, the Third Agent called Owner's counsel to continue negotiations. The Third Agent and Owner's counsel were unable to agree on the compensation to be paid.

35. To date, Atlantic and the Owner have been unable to agree on the compensation to be paid and the terms of the Easements. The difference between Atlantic's last offer and the Owner's last demand are substantially and materially different. Thus, despite these negotiations, Atlantic has been unable to acquire the Easements by contract.

36. Pursuant to the authority granted to Atlantic by Congress in Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), Atlantic now seeks to take by eminent domain the Easements over the Property as depicted herein and in **Exhibit 4-A** and **Exhibit 4-B**.

**WHEREFORE**, Atlantic respectfully requests that this Court:

A. Enter an Order of Judgment of Taking by Eminent Domain as to the Easements as described herein;

B. If later requested, grant Atlantic immediate possession of the Easements in the form of a preliminary injunction prior to the determination of just compensation upon deposit with the Court of a sum of money representing the value of such Easements as determined by Atlantic's appraisal or land rights valuation analysis;

C. Ascertain and award just compensation to the Owner for the taking of the Permanent Easements;

D. Ascertain and award just compensation to the Owner for the taking of the Temporary Easements; and

E. Grant such other relief as may be just and proper.

This the 29th day of June, 2018.

/s/ Henry L. Kitchin, Jr.
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
MCGUIREWOODS LLP
Post Office Box 599 (28402)
Wilmington, North Carolina 28401
Telephone: (910) 254-3800
Facsimile: (910) 254-3900
Email: hkitchin@mcguirewoods.com

Dhamian A. Blue
N.C. State Bar No. 31405
Blue LLP
205 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 833-1931
Facsimile: (919) 833-8009
Email: dab@bluellp.com

*Of Counsel:*

John D. Wilburn
Email: jwilburn@mcguirewoods.com
Richard D. Holzheimer, Jr.
Email: rholzheimer@mcguirewoods.com
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102
Telephone: (703) 712-5000
Facsimile: (703) 712-5050

*Counsel for Atlantic Coast Pipeline, LLC*